**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

AXEL RAUL ZAMARRON,

      Plaintiff,

v.                                          No. 1:21-cv-919-RB-GJF

HERMAN MADRID,
SIMON RAMIREZ, MARY GALLEGOS,
ROBIN BOURNE, OSCAR CHACON,
GEORGE GARCIA, CHRIS ROMERO, JR., and
DAVID VERRETT,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]**

THIS MATTER is before the Court on Defendants Herman Madrid, Simon Ramirez, Mary Gallegos, Robin Bourne, Oscar Chacon, George Garcia, Chris Romero, Jr., and David Verrett's (collectively, "Defendants") Motion to Dismiss for Failure to State a Claim (the "Motion"), filed on January 15, 2025. ECF 75. Plaintiff ("Zamarron") did not file a response. Defendants notified the Court that they had completed briefing on February 10, 2025. ECF 77. Pursuant to Local Rule 7.1(a), Defendants were not required to determine whether Plaintiff opposed the Motion.

For the reasons that follow, the Court **RECOMMENDS** that the Motion be **GRANTED IN PART AND DENIED IN PART**. Specifically, the Court **RECOMMENDS** that the Motion be **DENIED** to the extent that it seeks dismissal of the claim against Defendant Chacon for failing to reasonably protect Zamarron from violence at the hands of other inmates, **GRANTED** to the extent that it seeks dismissal without prejudice of the claim against Defendant Madrid for failing to reasonably protect Zamarron from violence at the hands of other inmates, and **GRANTED** to

---

[1] The undersigned files this Proposed Findings and Recommended Disposition pursuant to the presiding judge's Order of Reference, which was entered December 12, 2023. ECF 37.

1

the extent that it seeks dismissal with prejudice of all remaining claims.

## I.    FACTUAL BACKGROUND[2]

This case concerns a physical altercation at the Central New Mexico Correctional Facility ("CNMCF"). ECF 69-1. According to the Complaint, Zamarron was in CNMCF's custody at all relevant times. *Id*. Zamarron arrived at CNMCF on December 23, 2020, as a "county jail hold inmate," and Defendant Bourne housed Zamarron with convicted New Mexico Corrections Department ("NMCD") inmates, in violation of NMCD policy. *Id.* at 1. Soon after Zamarron's arrival, Defendants Chacon and Madrid overheard threats made by NMCD inmates towards Zamarron. *Id.* at 1–2. In response to the threats, Defendant Chacon told the housing unit that he was "trigger happy" and had "his money on the little guy" in any altercation. *Id.* at 2.

On December 30, 2020, Defendants Chacon and Madrid violated state COVID-19 orders by allowing quarantined and non-quarantined inmates to pick up breakfast together. *Id.* An NMCD inmate physically assaulted Zamarron during breakfast pickup (hereinafter, "the altercation"). *Id.* Responding to the altercation, Defendant Madrid punched Zamarron in the head two or three times and discharged chemical spray. *Id.* Next, Defendant Madrid threw Zamarron into the food cart and directed Defendant Chacon to "deploy cannisters full of gas and mace." *Id*. After being handcuffed, Zamarron remained disoriented and could not respond to officer commands, prompting Defendants Chacon and Madrid to discharge more chemical spray. *Id.*

Defendants then escorted Zamarron to the medical unit. *Id.* at 3. On the way, Zamarron asked Defendant Ramirez who punched him in the head, and Defendant Ramirez told him to "shut the fuck up before it happens again." *Id.* Once there, Defendants left Zamarron in a cell for several

---

[2] The facts that follow come from Zamarron's Amended Civil Complaint [ECF 69-1], which the Court accepts as true for the purposes of deciding the Motion. *See Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024). Unless otherwise specified, all references herein to "the Complaint" refer to this most recent version of it.

hours without running water to decontaminate the chemical spray. *Id.* Defendant Verrett denied Zamarron's request for water and threatened to use Zamarron as a "human mop" to clean up any spills. *Id.* During his medical evaluation, Zamarron told Defendants Verrett, Ramirez, and Romero that the chemical spray prevented him from opening his eyes for disciplinary report photos. *Id.* These Defendants proceeded to "verbally assault [Zamarron] by calling [him] an idiot, dumbass, and worthless fuck." *Id.* Zamarron then held his eyes open because he feared being physically assaulted by the Defendants. *Id.* The photos never appeared in a disciplinary report. *Id.* Next, Defendants returned Zamarron to a housing unit. *Id.* Once there, Defendant Verrett refused to replace Zamarron's blankets, sheets, and towels, and did not allow Zamarron to shower, change into clean clothes, or access hygiene products for three to seven days.[3] *Id.*

Zamarron faced disciplinary sanctions for his role in the altercation. *Id.* at 3–4. During the investigation, Defendant Gallegos relied on state COVID-19 orders to deny Zamarron an in-person interview. *Id.* Defendant Gallegos then removed Zamarron's telephone and visitation privileges and placed him in segregated housing for thirty days. *Id.* at 4. In her disposition, Defendant Gallegos did not find that Defendants' violations of NMCD policies and public health orders contributed to the altercation. *Id.* Zamarron has reports that contradict Defendant Gallegos's disposition, leading him to conclude that Defendant Gallegos is biased. *Id.* at 3–4. Defendants Garcia and Bourne did not answer Zamarron's appeal; they claim to have lost the appeal and related documents. *Id.* at 4.

Zamarron suffers mental, physical, spiritual, and emotional damage in the form of depression, anxiety, post-traumatic stress disorder, mood swings, and insomnia caused by Defendants' conduct. *Id.* at 5. The Complaint seeks relief for Zamarron's injuries and an order

---

[3] The original complaint specifies that Defendants allegedly prevented Zamarron from showering for seven days and denied him blankets, sheets, towels for three days. ECF 1 at 12.

requiring remedial training for Defendants. *Id.*

## II.    PROCEDURAL BACKGROUND

Zamarron filed his first complaint on September 20, 2021. ECF 1. Defendants filed a Partial Motion to Dismiss on July 26, 2024. ECF 57. The Court granted that motion in part. ECF 68. It dismissed without prejudice and with leave to amend all claims against the individual Defendants. *Id.* The Court instructed Zamarron to file a second amended complaint with particularized allegations such that "each individual [has] fair notice as to the basis of the claim against him or her." *Id.* at 2 n.1 (citation and quotations omitted). Zamarron complied with the Court's instructions [*see* ECF 69-1], prompting the Court to renew its Order to Answer [ECF 71]. Defendants filed the present Motion on January 15, 2025. ECF 75. Zamarron did not respond,[4] and Defendants indicated that briefing was complete on February 10, 2025. ECF 77.

## III.    PRIMARY ARGUMENTS

The Complaint accuses Defendants of violating Zamarron's Eighth Amendment right "to be free from assault by [a] prison guard or inmate." ECF 69-1 at 1. Construing the Complaint liberally as it must, *Cuervo*, 112 F.4th at 1312, the Court understands it to accuse Defendants of violating Zamarron's rights under six theories.

Failure to Protect

- Defendants Chacon and Madrid overheard inmates threatening a "group assault[]" on Zamarron and failed to prevent the altercation. ECF 69-1 at 1–2.

- Defendant Chacon told the housing unit that he was "trigger happy" and "had his money on the little guy," but failed to prevent the altercation. *Id.* at 2.

---

[4] Zamarron risks having his case dismissed for failure to prosecute. *See* Fed. R. Civ. P. 41(b). The Court sends all filings in this case to Southern New Mexico Correctional Facility, where Zamarron is incarcerated. *Offender Search*, NMCD (last visited May 2, 2025), https://search.cd.nm.gov/. Zamarron, however, did not respond to either dispositive motion. *See* ECFs 63 at 1; 77 at 1. Zamarron must comply with procedural rules and present his own arguments; the Court will not act as his advocate. *See* D.N.M.LR-Civ. 7.4(a); *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008); *Askari v. Taj & Ark, LLC*, 24-CV-07 JHR, 2024 WL 382665, at *3 (D.N.M. Feb. 1, 2024).

Excessive Force and Deliberate Indifference – Response to the Altercation

- During the altercation, Defendant Madrid punched Zamarron in the head two or three times, threw him into a food cart, discharged chemical spray, and directed Defendant Chacon to discharge chemical spray. *Id.*

- Defendants Chacon and Madrid discharged chemical spray on a handcuffed Zamarron. *Id.*

- Defendants left Zamarron in a cell for several hours without water to relieve the effects of the chemical spray.[5] *Id.* at 3. Defendant Verrett declined Zamarron's request for water and told Zamarron he would use him like a "human mop" to clean up any spills. *Id.*

- Without decontaminating the chemical spray, Defendants Ramirez, Romero, and Verrett forced Zamarron to open his eyes for disciplinary report photos. *Id.* The photos were not used in the disciplinary report. *Id.*

- Defendant Verrett refused to provide Zamarron with new blankets, sheets, or towels; and refused to allow Zamarron to shower, receive clean clothes, or receive hygienic products for three to seven days after the altercation. *Id.*

Improperly Imposing Sanctions

- Defendant Gallegos did not allow Zamarron an in-person disciplinary interview due to COVID-19 health orders, she demonstrated bias against Zamarron, and she ignored evidence when removing Zamarron's telephone and visitation privileges and placing him in segregated housing for thirty days. *Id.* at 4.

- Defendants Garcia and Bourne failed to answer Zamarron's appeals and lost relevant documents. *Id.*

Policy and Public Health Order Violations

- Defendant Bourne violated NMCD policy by housing Zamarron with NMCD inmates. *Id.* at 1.

- Defendants Madrid and Chacon violated New Mexico COVID-19 public health orders by allowing inmates to leave quarantine to get food. *Id.* at 2.

- Defendant Gallegos did not follow internal policies and procedures when sanctioning Zamarron. *Id.* at 4

---

[5] This allegation does not state explicitly who placed Zamarron in the medical unit cell. The present Complaint, though, allows the Court to infer who Zamarron alleges placed him in the cell. *See* ECF 69-1 at 3. It states that while "being escorted to medical, [Zamarron] asked . . . [Defendant Ramirez] who had punched [him] in the head . . ." *Id.* The Complaint does not allege that any other Defendant was present. *Id.* The following sentence states that "[u]pon arriving at the medical unit, [Zamarron] was thrown into a cell . . ." *Id.* Accordingly, the Complaint places Defendant Ramirez on notice that he is accused of placing Zamarron in the medical unit cell for several hours without running water.

<u>Supervisory Liability</u>

- Defendants Gallegos, Garcia, and Bourne bear responsibility for all individual Defendants' actions by virtue of their supervisory roles. *Id.*

<u>Threats and Verbal Assault</u>

- Defendant Ramirez told Zamarron to "shut the fuck up before it happens again" after Zamarron asked who punched him in the head. *Id.* at 3.

- Defendants Verrett, Ramirez, and Romero called Zamarron "an idiot, dumbass, and a worthless fuck" after he struggled to open his eyes for disciplinary report photos. *Id.*

Defendants provide five arguments for dismissal. ECF 75 at 3–8. First, they insist that they applied force in good faith to maintain order. *Id.* at 3. Second, they contend that verbal assault does not violate the Constitution. *Id.* at 4. Third, Defendants point out that the Complaint does not specify which policies and public health orders they allegedly violated. *Id.* at 5. Fourth, Defendants assert that the conditions of Zamarron's confinement did not pose a substantial risk of serious harm. *Id.* Fifth, Defendants invoke qualified immunity. *Id.* at 6–8.

## IV.    APPLICABLE LAW

### a.    Pro Se Pleadings

A pro se litigant's pleadings are construed liberally and judged against a less stringent standard than pleadings drafted by attorneys. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Specifically, a court "make[s] some allowances for 'the pro se plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.'" *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall*, 935 F.2d at 1110). A court will not, however, "assume the role of advocate" for the pro se litigant, *Yang*, 525 F.3d at 927 n.1 (internal quotation omitted), by "construct[ing] arguments or theories for the plaintiff in the absence of any

discussion of those issues," *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991)
(citation omitted).

A court will dismiss a complaint with prejudice and without leave to amend if "it is obvious
that the plaintiff cannot prevail on the facts he has alleged," making amendment futile. *Gee v.
Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010) (citation and quotations omitted). Further, a court
may deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party,
bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed[.]"
*Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Conversely, a court will dismiss a
complaint without prejudice and with leave to amend if the "factual allegations are close to stating
a claim but are missing some important element that may not have occurred to [the plaintiff.]"
*Hall*, 935 F.2d at 1110.

### b.  Failure to State a Claim

A Rule 12(b)(6) motion prompts a court to "assess whether the plaintiff's complaint alone
is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*,
336 F.3d 1194, 1201 (10th Cir. 2003) (citation and quotations omitted). When ruling on such a
motion, a court accepts "all well-pleaded factual allegations in the complaint" and construes them
"in the light most favorable" to the plaintiff. *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300,
1304 (10th Cir. 2020) (citation and quotations omitted). A court, however, will not accept "a legal
conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Bell
Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive such a motion, the plaintiff must
allege facts stating a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662,
678 (2009). Plausibility means more than a "sheer possibility." *Id.*

Failure to respond to a motion constitutes consent to grant that motion. D.N.M.LR–Civ. 7.1(b). When a plaintiff fails to respond to a motion to dismiss, however, courts "examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Issa v. Comp USA*, 354 F.3d 1174, 1177–78 (10th Cir. 2003).

### c.  Eighth Amendment Claims under § 1983

"The [Eighth] Amendment embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and quotations omitted). The Eighth Amendment prohibits cruel and unusual punishments, including the excessive use of force, and it imposes on prison staff a duty to provide humane conditions of confinement. *E.g.*, *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994). A plaintiff may hold civilly liable any individual who under color of law violates his or her Eighth Amendment rights. 42 U.S.C. § 1983.

### d.  Qualified Immunity

A government defendant may assert qualified immunity in a motion to dismiss, and a court will apply the defense to the conduct alleged in the complaint. *Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023). A court will assess (1) whether the complaint plausibly alleges that the defendant violated a constitutional right; and (2) whether the right was clearly established. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Hemry*, 62 F.4th at 1253.

Courts begin by judging the alleged conduct against a specific definition of the implicated constitutional right. *City of Tahlequah v. Bond*, 595 U.S. 9, 11 (2021) (per curiam). Even if a defendant violated that specific right, the defendant is liable only if that right was clearly established. *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19 (1982). A right is clearly established if "a Supreme Court or Tenth Circuit decision [is] on point," or if the "clearly established weight of

authority from other courts" indicate recognition. *E.g.*, *Easter v. Cramer*, 785 F. App'x 602, 607 (10th Cir. 2019) (citation and quotations omitted); *see also Irizarry v. Yehia*, 38 F.4th 1282, 1294 (10th Cir. 2022) (defining on-point precedent as "involv[ing] materially similar conduct"). A right is recognized when "existing precedent . . . placed the constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Recognition of the right place a defendant on notice that "what he is doing violates th[e] right." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (citing *Mullenix v. Luna*, 557 U.S. 7, 11 (2015) (per curiam)).

If no on-point precedent recognizes the right, that right is clearly established only if it is obvious. *See Taylor v. Riojas*, 592 U.S. 7, 7–9 (2020) (per curiam) (reasoning that, despite no clearly established law, corrections officers were not entitled to qualified immunity when they housed a prisoner in a cell "teeming with human waste" "for only six days" because no reasonable officer could conclude that the constitution permitted such action). The Tenth Circuit applies the "obviousness" exception sparingly. *See Rosales v. Bradshaw*, 72 F.4th 1145, 1157 (10th Cir. 2023) (applying the obviousness exception when an off-duty and out-of-uniform sheriff's deputy seized and assaulted a law-abiding motorist by pointing a loaded firearm at him, misconduct that resulted in the deputy being fired, convicted of multiple felony crimes, and incarcerated).

## V.    ANALYSIS

The following section proceeds in three parts. First, the Court will explain why the Eighth Amendment, not the Fourteenth Amendment's Due Process Clause, governs the Complaint. Second, the Court will determine whether the Complaint plausibly alleges that Defendants violated Zamarron's rights. Third, for allegations that plausibly allege – or that could be amended to plausibly allege – a violation, the Court will determine if those rights were clearly established.

a. **The Eighth Amendment governs the Complaint because the altercation took place after Zamarron pled guilty.**

At the outset, the Complaint's references to Zamarron's status as a "county jail hold inmate" who was placed in a unit with "sentenced [and] convicted" NMCD inmates raised questions as to whether Eighth Amendment standards or Fourteenth Amendment Due Process Clause standards govern Zamarron's claim.[6] ECF 69-1. The Eighth Amendment protects only convicted prisoners; the Due Process Clause protects pretrial detainees. *See Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979); *Ingraham v. Wright*, 430 U.S. 651, 669–70 (1977); *Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015). An inmate transitions from pretrial detainee to convicted prisoner once his guilt has been adjudicated. *See Ingraham*, 430 U.S. at 671 n.40 (collecting cases). An inmate's guilt is adjudicated if he pled guilty and is detained while awaiting sentencing. *Berry v. City of Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990); *see United States v. Ferry*, 457 F. Supp. 3d 1163, 1170 (D.N.M. 2020) (applying *Berry*); *see also Boykin v. Alabama*, 395 U.S. 238, 242 (1969) ("A plea of guilty . . . is itself a conviction").

Complaints like Zamarron's, where the events take place between entry of a guilty plea and sentencing, are governed by Eighth Amendment, not due process, standards. *See Berry*, 900 F.2d at 1493. Documents indicating that Zamarron pled guilty were filed in his state court cases in March 2020. *See New Mexico v. Zamarron,* D-117-CR-201800267; *New Mexico v. Zamarron*, D-117-CR-201900082.[7] The events described in the Complaint began on December 23, 2020. ECF

---

[6] The Complaint's allegations concerning Zamarron's disciplinary hearing implicate the Due Process Clause regardless of this section's analysis.

[7] Courts can judicially notice court filings, but they can only consider the fact that documents were filed; they cannot consider them for the truth asserted therein. *Ramon v. Mantilla*, No. 24-cv-86 GJF/DLM, 2024 WL 5245479, at *4 (D.N.M. Nov. 6, 2024) (collecting cases). Thus, the Court cannot consider as true the dates asserted within the plea agreement, but it can, and does, judicially notice that a plea agreement was entered in Zamarron's criminal cases in March 2020. *See id.* If these documents do not accurately reflect the date or substance of Zamarron's plea agreement, he should avail himself of the objection period to this Proposed Findings and Recommended Disposition, and the Court will reconsider the issue as a motion for summary judgment.

69-1 at 1. Zamarron's guilt had been adjudicated before the events alleged in the Complaint; therefore, Eighth Amendment standards guide the Court's analysis.

**b. Whether the Complaint plausibly alleges that Defendants violated Zamarron's rights.**

In this section, the Court will determine whether the Complaint's six theories of Eighth Amendment violation plausibly allege that Defendants violated Zamarron's rights. The Court will address each in turn: (1) failure to provide reasonable protection from violence at the hands of other inmates; (2) use of excessive force and deliberate indifference in response to the altercation; (3) improperly imposing sanctions; (4) policy and public health violations; (5) supervisory liability; and (6) threats and verbal assault.

1. <u>The Complaint plausibly alleges that Defendant Chacon violated Zamarron's Eighth Amendment right to reasonable protection from violence, and it could be amended to plausibly allege that Defendant Madrid violated the same right.</u>

The Eighth Amendment duty to provide humane conditions of confinement compels prison staff to "protect prisoners from violence at the hands of other prisoners" *Farmer*, 511 U.S. at 833; (citation and quotations omitted); *Pittman v. Kahn*, No. 23-1153, 2024 WL 507476, at *2 (10th Cir. Feb. 9, 2024). A breach of this duty to protect consists of two elements. *Farmer*, 511 U.S. at 834. First, a plaintiff must have suffered an objectively sufficiently serious harm. *Id.*; *Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008). Second, a plaintiff must plausibly allege that the defendant subjectively knew facts sufficient to infer that the plaintiff faced harm, and the defendant drew such an inference. *Farmer*, 511 U.S. at 837; *Howard*, 534 F.3d at 1236; *Requena v. Roberts*, 893 F.3d 1195, 1213–15 (10th Cir. 2018); *see also Verdecia v. Adams*, 327 F.3d 1171, 1176 (10th Cir. 2003) ("The mere showing of simple, or even heightened, negligence does not establish that [defendants] were subjectively aware of the risk."). A physical assault by a fellow inmate satisfies the objective element. *See Todd v. Montoya*, 877 F. Supp. 2d 1048, 1093 (D.N.M. 2012) (citing

*Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)); *Granger v. Padilla*, No. 20-CV-1075 JCH/JHR, 2023 WL 6037907, at *10 (D.N.M. Sept. 15, 2023).

The Tenth Circuit explained the subjective element in *Howard v. Waide*, 534 F.3d 1227 (10th Cir. 2008). There, a notoriously violent prison gang routinely beat and sexually assaulted the plaintiff – who was openly gay, of slight build, and imprisoned for financial crimes – to extort him into assisting the gang. *Id.* at 1230–34, 1238. The plaintiff complained to prison staff of the violence, but they refused to securely house him until he identified gang members. *Id.* at 1230–34. One defendant told the plaintiff that "he 'would have to learn to live with' risks to his safety and that 'crime just doesn't pay[.]'" *Id.* at 1239. The beatings and assaults continued. *Id.* at 1233. The court held that the plaintiff produced sufficient evidence to survive summary judgment regarding some defendants' subjective knowledge of the risk he faced, but not others. *Id.* at 1239. The court reasoned that the group of defendants privy to the plaintiff's complaints had direct knowledge of the risk. *See id.* Additionally, the court reasoned that a separate group of defendants not privy to the plaintiff's complaints nonetheless had circumstantial knowledge of the risk based on their knowledge of the plaintiff's characteristics that made him a likely target of the gang's notorious violence. *See id.* at 1238. Conversely, the court reasoned that a defendant at a statewide office lacked knowledge because that defendant was not privy to the plaintiff's complaints, nor did he know of the plaintiff's vulnerabilities. *See id.* at 1243; *see also Pittman*, 2024 WL 507476, at *3 (reasoning that awareness that one inmate threatened to beat another does not establish knowledge).

The Tenth Circuit applied the subjective element to a factually similar prison beating in *Requena v. Roberts*, 893 F.3d 1195 (10th Cir. 2018). There, inmates beat the plaintiff twice after he caused the confiscation of Native American drumsticks used in cultural ceremonies. *Id.* at

1213–14. Some defendants allegedly knew that the plaintiff feared retaliation from certain Native American inmates. *Id.* at 1214. One defendant "allegedly knew a fight was about to occur and prevented another officer from averting it." *Id.* The first beating was allegedly in retaliation for the drumstick confiscation; the second was not. *Id.* The court held that the plaintiff plausibly alleged the subjective knowledge of some defendants, but not others. *Id.* at 1214–15. The Court reasoned that the plaintiff plausibly alleged the subjective knowledge of the defendants regarding the first beating because they knew that the plaintiff feared retaliation from specific inmates, but they did not intervene. *See id.* at 1214. Conversely, the Court reasoned that the plaintiff did not plausibly allege the subjective knowledge of defendants regarding the second beating because the plaintiff did not allege any retaliatory motive for that beating. *See id.* at 1215.

Here, the Complaint plausibly alleges the objective element because it asserts Zamarron "was assaulted [and] attacked by a[n] [] inmate[.]" ECF 69-1 at 2. Additionally, the Complaint plausibly alleges the subjective knowledge of Defendant Chacon, but not Defendant Madrid. *See Howard*, 534 F.3d at 1238–39; *Requena*, 893 F.3d at 1214–15. Defendants Chacon and Madrid allegedly knew of facts sufficient to infer that Zamarron would be subject to a beating by another inmate. *See Howard*, 534 F.3d at 1238–39; *Requena*, 893 F.3d at 1214–15. According to the Complaint, Defendants Chacon and Madrid overheard threats and coordination of a "group assault" against Zamarron. ECF 69-1 at 1–2.

The Complaint, however, only alleges that Defendant Chacon drew the inference that Zamarron faced a group assault. *See Howard*, 534 F.3d at 1238–39; *Requena*, 893 F.3d at 1214–15. Defendant Chacon, like the defendants in *Howard* and *Requena*[8] with subjective knowledge,

---

[8] The Tenth Circuit acknowledged that the case against this defendant "[was], at best, a close one." *Requena*, 893 F.3d at 1214 n.14. The Court makes a similar acknowledgment here. Even when a plaintiff establishes the objective and subjective elements, a defendant may escape liability if he or she "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Defendant Chacon's alleged "trigger happy" statement could

made a verbal statement indicating his awareness that a beating would likely occur. *See Howard*, 534 F.3d at 1238–39; *Requena*, 893 F.3d at 1214–15. After overhearing the threats and coordination of the group assault, Defendant Chacon allegedly "advised the unit . . . that he was '[t]rigger happy' [and] also claimed to 'have his money on the little guy' in the future altercation." ECF 69-1 at 2. Conversely, the Complaint contains no direct evidence that Defendant Madrid inferred that Zamarron would be subject to a beating by another inmate. *See id.*

The Complaint does not allege facts sufficient to show Defendant Madrid's inference of risk; instead, it alleges only Defendant Madrid's awareness that some inmates threated to beat Zamarron. *See Pittman*, 2024 WL 507476, at *3. Unlike the Native American inmates in *Requena* and the prison gang in *Howard*, NMCD inmates – in an NMCD facility – are not a discrete group that posed an obvious risk of violence towards Zamarron. *See Howard*, 534 F.3d at 1239; *Requena*, 893 F.3d at 1214. The Complaint implies repeatedly that Zamarron, a "county jail hold inmate," faced an obvious risk from the "[NMCD] inmates" with whom Defendants housed him, but it does not explain how NMCD inmates pose a risk to the safety of county jail hold inmates. *See* ECF 69-1. Nor does the Complaint allege any connection between the NMCD inmates who threatened Zamarron and the ones who beat him. *See id.* Further, unlike in *Howard*, the Complaint does not allege that Zamarron has several obvious characteristics that make him a likely target of prison violence. *See Howard*, 534 F.3d at 1239. The Complaint implies that Zamarron is of short stature, but this, without more, is insufficient to conclude that the risk to Zamarron was obvious to Defendant Madrid. *See id.* The Complaint fails to plausibly allege that Defendant Madrid inferred that Zamarron faced a beating by other inmates; therefore, the Complaint fails the subjective

---

be interpreted as him announcing his intent to intervene at the first sign of violence – a reasonable response. Alternatively, his "money on the little guy" statement could be interpreted as him announcing his intent to let the fight occur without intervention – an unreasonable response. Construing the allegations in Zamarron's favor, the Court adopts the latter interpretation. *See Iqbal*, 556 U.S. at 678.

element as to him.

Accordingly, the Court recommends denying the Motion to the extent that it seeks dismissal of the failure to protect claim against Defendant Chacon. Additionally, the Court recommends granting the Motion and dismissing without prejudice the failure to protect claims against Defendant Madrid with leave to amend because it may not have occurred to Zamarron to plead facts showing that Defendant Madrid inferred that Zamarron would be subject to a beating. *See Hall*, 935 F.2d at 1110.

        2.  <u>The Complaint does not plausibly allege, and could not be amended to plausibly allege, that any Defendant violated Zamarron's Eighth Amendment rights by responding to the altercation.</u>

The Complaint accuses Defendants of violating Zamarron's Eighth Amendment rights in various ways in their response to the altercation. ECF 69-1 at 2–3. In this section, the Court will explain that the Complaint's allegations do not plausibly allege that (1) Defendant Madrid used excessive force while breaking up the altercation; (2) Defendants Chacon or Madrid used excessive force by discharging chemical spray after placing Zamarron in handcuffs; (3) Defendants Ramirez or Verrett provided inhumane conditions of confinement prior to Zamarron's medical evaluation; (4) Defendants Verrett, Ramirez, or Romero violated Zamarron's rights during Zamarron's medical evaluation; and (5) Defendant Verrett provided inhumane conditions of confinement in the week following his medical evaluation.

        *a.  Breaking up the altercation*

When a complaint alleges excessive force in violation of the Eighth Amendment occurring during a prison disturbance, courts apply the *Whitley* standard, which asks "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *See Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (citation

and quotation omitted); *Hudson*, 503 U.S. at 6–7; *Redmond v. Crowther*, 882 F.3d 927, 936–37

(10th Cir. 2018). A prison disturbance – such as a fight between inmates – forces prison staff to

make quick decisions under pressure as to how to balance competing penological objectives. *See*

*DeSpain v. Uphoff*, 264 F.3d 965, 975–76 (10th Cir. 2001) (applying *Whitley*, 475 U.S. at 320–

24); *Vue v. O'Neill*, No. 22-CV-506 PP, 2023 WL 4365918, at *9 (E.D. Wis. July 6, 2023) (citing

*Hudson*, 503 U.S. at 6–7); *see also Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991)

(listing security as a legitimate penological objective).

A use of force is malicious or sadistic when "it involves the unnecessary and wanton

infliction of pain." *Sampley v. Ruettgers*, 704 F.2d 491, 495–96 (10th Cir. 1983) (internal quotation

omitted). Generally, prison staff use force in good faith to restore discipline, and not to

unnecessarily inflict pain, when they punch and use chemical spray on fighting inmates. *See*

*Hudson*, 503 U.S. at 6–7; *Sampley*, 704 F.2d at 495; *Green v. Corrs. Corp. of Am.*, 401 F. App'x

371, 376 (10th Cir. 2010). *But see DeSpain*, 264 F.3d at 978 (reasoning that discharging pepper

spray as a practical joke was a malicious and sadistic effort to inflict pain).

Here, *Whitley* governs because the Complaint alleges that Defendant Madrid used force

during a fight between inmates. ECF 69-1 at 2. Applying the *Whitley* standard, the Complaint

alleges that Defendant Madrid used force, and directed Officer Chacon[9] to use force, to preserve

and restore discipline, not maliciously and sadistically to cause harm. *See Hudson*, 503 U.S. at 6–

7; *Sampley*, 704 F.2d at 495. Defendant Madrid allegedly punched Zamarron two or three times

and used chemical spray on fighting inmates, including Zamarron. ECF 69-1 at 2. Additionally,

the Complaint alleges that Defendant Madrid threw Zamarron into the food cart while Zamarron

---

[9] The Complaint does not explicitly accuse Defendant Chacon of using excessive force prior to handcuffing Zamarron, but it accuses Defendant Madrid of using excessive force by directing Defendant Chacon to discharge chemical spray. ECF 69-1 at 2. This analysis applies to the extent that the Complaint accuses Defendant Chacon of pre-handcuffing excessive force.

attempted to protect himself from other inmates. *Id.* Zamarron's intent to defend himself does not indicate that Defendant Madrid's use of force was malicious. *See id.* The Complaint does not plausibly allege that Defendant Madrid used force unnecessarily, nor does it allege that he used force to harm Zamarron. *See id.* Accordingly, the Court recommends granting the Motion to the extent that it seeks dismissal with prejudice of the excessive force claims against Defendant Madrid because it is obvious that Zamarron cannot prevail on the alleged facts. *See Gee*, 627 F.3d at 1195.

### b. Discharging chemical spray after placing Zamarron in handcuffs

*Whitley* also applies when prison staff discharge chemical spray on a restrained inmate refusing to comply with directives during a prison disturbance. *See Miller v. Glanz*, 948 F.2d 1562, 1567 (10th Cir. 1991) (citing *Whitley*, 475 U.S. at 320); *DeSpain*, 264 F.3d at 975–76, 978. In such a situation, a plaintiff must allege depraved actions to demonstrate that force was applied maliciously and sadistically to cause harm. *See Stevenson v. Cordova*, 733 F. App'x 939, 946 (10th Cir. 2018) (citing *Mitchell v. Maynard*, 80 F.3d 1433, 1440–41 (10th Cir. 1996) (holding jury could find prison guards acted maliciously and sadistically by stripping an inmate, placing him in wrist, ankle, and belly chains, picking him up by his elbows and forcing him to run across a gravel yard, then kicking him when he fell while yelling racial epithets); *Miller*, 948 F.2d at 1564, 1567 ("holding allegations sufficient to state an Eighth Amendment claim where officers kicked, beat, and choked a prisoner who was handcuffed behind his back and whose ankles were also restrained")).

Here, the Complaint alleges that Defendants Chacon and Madrid discharged chemical spray on a handcuffed Zamarron in a forceful, but not depraved, good faith effort to preserve and restore discipline. *See Whitley*, 475 U.S. at 320; *Stevenson*, 733 F. App'x at 946. The Complaint

acknowledges that the Defendants discharged spray to induce compliance with directives, not to cause harm. ECF 69-1 at 2. It reasons that Zamarron's inability to "speak, see[,] or listen to the directions being given from the corrections officers [made] the officers think [he] was refusing to follow directives [and] led to C-5 flameless chemical being sprayed on [Zamarron] while . . . in handcuffs." *Id.* Accordingly, the Court recommends granting the Motion to the extent that it seeks dismissal with prejudice of the post-handcuffing excessive force claims against Defendants Chacon and Madrid because it is obvious that Zamarron cannot prevail on the alleged facts. *See Gee*, 627 F.3d at 1195.

### c.   Conduct prior to Zamarron's medical evaluation

The *Whitley* standard governs the duty to provide humane conditions of confinement during a prison disturbance. *See Whitley*, 475 U.S. at 320–21; *DeSpain*, 264 F.3d at 976 (reasoning that courts will examine whether defendants acted maliciously and sadistically). *But see Maney v. Oregon*, 729 F. Supp. 1087, 1120 n.11 (D. Or. 2024) (collecting cases and concluding that the *Whitley* standard applies only to excessive force claims). Once the disturbance ends, however, a deliberate indifference standard governs this duty. *DeSpain*, 264 F.3d at 976; *see Farmer*, 511 U.S. at 837. When the deliberate indifference standard governs, the plaintiff must establish (1) a sufficiently serious condition of confinement to implicate constitutional protection; and (2) that prison staff acted with deliberate indifference to inmate wellbeing. *See DeSpain*, 264 F.3d at 971 (quoting *Farmer*, 511 U.S. at 834).

A delay in decontaminating a chemically-sprayed inmate who is not suffering from any medical condition beyond the expected discomfort is not sufficiently serious to implicate constitutional protection. *See Moskos v. Hardee*, 24 F.4th 289, 298 (4th Cir. 2022) ("In circumstances such as these, involving[, at most, a two-hour] delay in decontamination, without

any aggravating factors such as a serious medical reaction, courts have consistently found that the objective prong is not satisfied."); *Rainey v. Boyd*, No. 12-CV-564 CMA/MEH, 2012 WL 3778356, at *10 (D. Colo. Aug. 15, 2012) ("the delay of a medical response to an intolerance to pepper spray has been found not to violate the Eighth Amendment's objective element"); *Williams v. Trammell*, No. 14-CV-487 RAW/SPS, 2016 WL 1171639, at *7 (E.D. Okla. Mar. 23, 2016) (reasoning that a failure to decontaminate chemical spay is not an objectively serious medical condition unless it gives rise to a plainly obvious or diagnosed medical reaction). *But see Danley v. Allen*, 540 F.3d 1298, 1311 (11th Cir. 2008)[10] ("the effects of prolonged exposure to pepper spray with inadequate decontamination and poor ventilation" are sufficiently serious).

Here, *Whitley* applies to the conditions of confinement claim against Defendant Martinez because a prison disturbance existed when he placed Zamarron in the cell without running water to decontaminate the chemical spray. ECF 69-1 at 2–3. Defendant Ramirez allegedly placed Zamarron in the cell in the immediate aftermath of the altercation, and the Complaint indicates that Zamarron feared attack by other inmates even after being handcuffed. *Id.*

Applying *Whitley*, the Complaint does not plausibly allege that Defendant Ramirez breached his duty to provide humane conditions of confinement during a prison disturbance. *See DeSpain*, 264 F.3d at 976. Initially, the Complaint does not accuse Defendant Ramirez of placing Zamarron in the cell maliciously and sadistically for the purpose of causing harm. ECF 69-1 at 2–3. Moreover, even if Defendant Ramirez acted maliciously and sadistically, Zamarron experiencing the expected discomfort from chemical spray is not a sufficiently serious condition to implicate constitutional protection. *See Moskos*, 24 F.4th at 298; *Rainey*, 2012 WL 3778356, at *10; *Williams*, 2016 WL 1171639, at *7. The Complaint alleges that Defendant Ramirez left

---

[10] The court held that temporary discomfort caused by the *use* of pepper spray is not sufficiently serious to implicate constitutional protections. *Danley*, 540 F.3d at 1311.

Zamarron in a medical unit cell without running water to decontaminate chemical spray for "plenty of hours[.]" ECF 69-1 at 3. According to the Complaint, the chemical spray continued to burn Zamarron's "eyes, nose, head, mouth, and [his] entire body" while in the cell. *Id.* These conditions represent the expected discomfort arising from the lawful use of chemical spray.[11] The Complaint fails to allege a plainly obvious or diagnosed medical reaction to the spray. *Id.*

Additionally, the Complaint does not plausibly allege that Defendant Verrett breached his duty to provide humane conditions of confinement by refusing to provide Zamarron with water when asked. *See DeSpain*, 264 F.3d at 976. A deliberate indifference standard governs this allegation because the prison disturbance had ended. *See id.* The Complaint states that "plenty of hours" passed between Defendant Ramirez leaving Zamarron and Zamarron asking Defendant Verrett for water. ECF 69-1 at 3. The Complaint does not allege that Defendant Verrett acted with deliberate indifference to Zamarron's wellbeing because, like the allegation against Defendant Ramirez, it does not allege a medical condition beyond the expected discomfort from chemical spray. *See id.* Moreover, per the Complaint, only "a few minutes" passed between Zamarron's request for water and his medical examination. *Id.* Thus, Defendant Verrett is responsible only for a few minutes of Zamarron's alleged harm. *See id.* During those few minutes, the Complaint does not allege that Zamarron exhibited any plainly obvious or medically diagnosed conditions. *See id.* Accordingly, the Court recommends granting the Motion to the extent that it seeks dismissal with prejudice of the unconstitutional conditions of confinement claims against Defendants Ramirez and Verret because it is obvious that Zamarron cannot prevail on the alleged facts.[12] *See Gee*, 627

---

[11] The Complaint states that Zamarron experiences "depression, anxiety, PTSD, mood swings, [and] insomnia" due to the altercation. ECF 69-1 at 5. The Complaint does not, however, explain that these conditions were plainly obvious or medically diagnosed. *See id.* They may be relevant for recoverable damages, but not for constitutional injury.

[12] Both Defendants allegedly threatened Zamarron during this time period. ECF 69-1 at 3. While these threats may be relevant to the Defendants' subjective intent, they are addressed separately. *See infra* Part V(b)(6).

F.3d at 1195.

### d. Conduct during Zamarron's medical evaluation

The Complaint alleges that, during the medical examination, Defendants Verrett, Ramirez, and Romero forced Zamarron to open his eyes for disciplinary report photos. ECF 69-1 at 3. When Zamarron stated that the burning from the chemical spray prevented him doing so, the Defendants "beg[a]n to verbally assault" him. *Id.* The Complaint states that Zamarron eventually opened his eyes because he feared a physical assault from Defendants. *Id.* According to the Complaint, the photos were not in the disciplinary report. *Id.* These allegations do not implicate the Eighth Amendment. As explained *infra* Part V(b)(6), the alleged threats and verbal assaults are not actionable. As explained *supra* Part V(b)(2)(a), neither is the expected discomfort caused by chemical spray. It is not relevant that the Defendants never used the photos. Accordingly, the Court recommends granting the Motion to the extent that it seeks dismissal with prejudice of the claims against Defendants Verrett, Ramirez, and Romero arising from conduct during the medical examination because it is obvious that Zamarron cannot prevail on the alleged facts. *See Gee*, 627 F.3d at 1195.

### e. Housing Zamarron after his medical evaluation

A routinely uncomfortable cell is part of the criminal punishment. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Hudson*, 503 U.S. at 9. Thus, to state a conditions of confinement claim concerning cell conditions, an inmate must allege a deprivation of a recognized human need sufficient to deny "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see Wilson v. Seiter*, 501 U.S. 294, 304–05 (1991). Courts consider the cumulative impact of conditions when they collectively deprive an inmate of a single recognized need. *Wilson*, 501 U.S. at 304–05 (explaining that low cell temperature and no blankets may combine to deprive an inmate

of the recognized need of warmth); *Mitchell*, 80 F.3d at 1442. When assessing cumulative impact, however, "[n]othing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson*, 501 U.S. at 305.

A deprivation of a recognized need spanning a week or less only denies an inmate the minimal civilized measure of life's necessities through truly deplorable conditions. *See Hutto v. Finley*, 437 U.S. 678, 686–87 (1978) (a deprivation "might be tolerable for a few days and intolerably cruel for weeks or months"); *Barney v. Pulsipher*, 143 F.3d 1299, 1311–12 (citing *see, e.g.*, *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir.1994) (deplorably filthy and patently offensive cell with excrement and vomit not unconstitutional because conditions lasted only for 24 hours); *White v. Nix*, 7 F.3d 120, 121 (8th Cir.1993) (eleven day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of cleaning supplies); *Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir.1988) (five day stay in "filthy, roach-infested cell" not unconstitutional)); *DeSpain*, 264 F.3d at 974; *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (reasoning that a two month deprivation of hygienic products that necessitated medical treatment may have been a constitutional violation); *Gulas v. White*, No. 06-CV-340 JH/LFG, 2008 WL 11451308, at *2–3 (D.N.M. Aug. 15, 2008) (holding that preventing showering for eight days was not a constitutional violation). Shelter and hygiene are two recognized human needs, and a deprivation of either can deny an inmate the minimal civilized measure of life's necessities. *See Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980); *Penrod*, 94 F.3d at 1405–06.

Here the Complaint alleges a deprivation of shelter and hygiene,[13] but the alleged

---

[13] Inadequate bedding, which the Complaint also alleges, is relevant only when combined with other conditions to deprive an inmate of warmth. *See Wilson*, 501 U.S. at 304 (warmth is a recognized need); *Skelton v. Bruce*, 409 F. App'x 199, 204 (10th Cir. 2010) (inmates without heat *or* blankets may state a claim); *Langford v. Grady Cnty. Det. Ctr.*, 670 F. Supp. 2d 1213, 1226–27 (W.D. Okla. 2009) (allegations of significant cold for three days without adequate clothing, blankets, or bedding survived summary judgment); *see also Shannon v. Graves*, 257 F.3d 1164, 1169 (10th Cir. 2001) (alleged fecal contamination of blankets raised material issue of fact, "particularly when it is obvious that

deprivations did not deny Zamarron the minimal civilized measure of life's necessities because they spanned a week or less. *See Barney*, 143 F.3d at 1312; *Penrod*, 94 F.3d at 1406; *Gulas*, 2008 WL 11451308, at *2–3. The Complaint alleges that Defendant Verrett denied Zamarron new blankets, sheets, towels, clean clothes, hygienic products, and the opportunity to shower for three-to-seven days. ECF 69-1 at 3. These conditions may be intolerably cruel for weeks or months; however, they are tolerable because they lasted for a week or less. *See Barney*, 143 F.3d at 1312.

Moreover, the alleged deprivations did not combine to deny Zamarron the minimal civilized measure of life's necessities because they did not act on a *single* recognized need. *See Wilson*, 501 U.S. at 304–05. The Complaint's allegations speak to two separate human needs – shelter and hygiene – that do not by themselves establish an Eighth Amendment violation. Because they are separate needs, they cannot have a mutually enforcing effect on a single need. *See id.* Accordingly, the Court recommends granting the Motion to the extent that it seeks dismissal with prejudice of the conditions of confinement claim against Defendant Verrett because it is obvious that Zamarron cannot prevail on the alleged facts. *See Gee*, 627 F.3d at 1195.

   3.   The Complaint does not plausibly allege that any Defendant violated
        Zamarron's Eighth or Fourteenth Amendment rights by sanctioning him.

The Complaint accuses Defendants of violating Zamarron's rights by imposing sanctions in response to the altercation. ECF 69-1 at 3–4. In this section, the Court will explain that the Complaint's allegations fail to state a claim under either the Eighth or Fourteenth Amendments.

---

inmates will need to use those blankets for warmth"). The Complaint does not mention any other conditions that would deprive Zamarron of warmth. *See* ECF 69-1 at 3.

In a similar case, an inmate stated a claim when prison staff, in addition to other misconduct, allegedly pepper sprayed him and denied him clean bedding, towels, or clothes for seven days. *Gray v. Crittendon*, No. 19-CV-579 JD/MGG, 2020 WL 4059190, at *2–3 (N.D. Ind. July 20, 2020). The clothes and bedding that he had were allegedly contaminated with pepper spray, causing him to spend seven days living in "hellfire." *Id.* Conversely, here, the Complaint does not allege decontaminated bedding, towels, or clothes. *See* ECF 69-1 at 3. Accordingly, the Court remains focused on shelter and hygiene, two recognized needs under the Eighth Amendment.

Section 1983, as opposed to habeas, is the proper vehicle for challenging a prison disciplinary sanction that does not prolong the inmate's detention. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005); *Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007); *see also Trump v. J.G.G.*, 604 U.S. __, No. 24A931, slip op. at 2 (U.S. Apr. 7, 2025) (reasoning that a detainee must proceed under habeas when seeking relief that implies the invalidity of confinement).

Here, a § 1983 challenge is proper because the disciplinary sanctions did not prolong Zamarron's detention, and he does not seek relief that implies the invalidity of his confinement. *See Wilkinson*, 544 U.S. at 82; *J.G.G.*, 604 U.S. __. Defendants sanctioned Zamarron by removing telephone and visitation privileges and placing him in segregated housing for thirty days. ECF 69-1 at 4. Zamarron seeks as relief monetary damages and an order requiring Defendants to attend remedial training. *Id.* at 5. Accordingly, Zamarron's challenge to his disciplinary sanction is properly before the Court in his § 1983 Complaint.

### a. Eighth Amendment

A disciplinary sanction violates the Eighth Amendment only if it violates contemporary standards of decency, demonstrates deliberate indifference to a serious medical need, or is grossly disproportionate to the offense charged. *See Adams v. Negron*, 94 F. App'x 676, 678 (10th Cir. 2004); *Moore v. Stotts*, 804 F. Supp. 202, 204 (D. Kan. 1992); *Wheeler v. Martinez*, No. 19-CV-6538 ODW/KES, 2019 WL 7630862, at *6 (C.D. Cal. Nov. 21, 2019) (citing *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)). A thirty-day confinement in segregation, without more, does not offend evolving standards of decency. *See Ellis v. Denver Cnty. of City*, No. 22-CV-1874 RM/KAS, 2024 WL 3950932, at *14 (D. Colo. Aug. 27, 2024) (collecting Tenth Circuit cases to conclude that spending 510 days in solitary confinement, without any additional deficiency, did not violate the Eighth Amendment); *Littlefield v. Deland*, 641 F.2d 729, 730–31, 732 n.2 (10th Cir. 1981)

(reasoning that a mentally ill inmate's fifty-six day stay in solitary confinement without opportunity to review confinement would have violated the Eighth Amendment); *see also* 6 C.F.R. § 115.43(b) (allowing non-punitive segregation of immigration detainees for thirty days).

Removing visitation privileges violates the Eighth Amendment only if the removal is arbitrary or lasts for several years. *Overton v. Bazzetta*, 539 U.S. 126, 136–37 (2003); *Wirsching v. Colorado*, 360 F.3d 1191, 1205 (10th Cir. 2004) (citing *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 461 (1989)) ("visitation with a particular person does not constitute basic necessity, the denial of which would violate the Eighth Amendment"); *Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (removing family visitation privileges "is not a viable claim under § 1983").

Here, the Complaint does not plausibly allege that the sanctions imposed by Defendant Gallegos violate the Eighth Amendment. *See Adams*, 94 F. App'x at 678; *Wirsching*, 360 F.3d at 1205. Zamarron was placed in segregation for thirty days [ECF 69-1 at 4], which, without more, does not offend evolving standards of decency, especially given the law's allowance of non-punitive thirty-day segregation for certain immigration detainees. *See* 6 C.F.R. § 115.43(b). Additionally, removing telephone and visitation privileges did not violate the Eighth Amendment because removal was not arbitrary, and the Complaint does not allege that it lasted for several years. [14] *See Overton*, 539 U.S. at 137; *Wirsching*, 360 F.3d at 1205. Instead, Defendant Gallegos allegedly removed these privileges to sanction Zamarron for his role in the altercation. ECF 69-1 at 4. Accordingly, the Court recommends granting the Motion to the extent that it seeks dismissal with prejudice of the claims against Defendant Gallegos for violating Zamarron's Eighth

---

[14] The original complaint indicates that Zamarron's telephone and visitation privileges had been restored by September 16, 2021, a few months after their removal. *See* ECF 1 at 6, 14 (indicating that Zamarron's family can "see, hear, and feel" his problems worsening).

Amendment rights by imposing sanctions because it is obvious that Zamarron cannot prevail on the alleged facts. *See Gee*, 627 F.3d at 1195.

> ### b.  Fourteenth Amendment

Inmates subject to disciplinary hearings receive minimal due process protections because disciplinary hearings are not criminal prosecutions. *Mitchell*, 80 F.3d at 1445 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). As such, to state a claim, an inmate must first allege a deprivation of a constitutionally protected liberty interest, which comes from either the Due Process Clause or state law. *See Thompson*, 490 U.S. at 460. Not all state law created interests, though, become constitutionally protected liberty interests. *See Thompson*, 490 U.S. at 460; *McGhee v. Williams*¸ No. 04-CV-239 MV/LAM, 2009 WL 10707098, at *14 (D.N.M. June 1, 2009) (applying *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995)). An inmate has a constitutionally protected liberty interest in a state law created interest when a deprivation of that interest "exceed[s] the sentence in such an unexpected manner" or "imposes atypical and significant hardship[.]" *Sandin*, 515 U.S. at 484. If an inmate alleges a deprivation of a constitutionally protected liberty interest, the inmate must then show that the defendants failed to provide procedural due process safeguards prior to the deprivation. *See Thompson*, 490 U.S. at 460.

The Due Process Clause does not grant inmates a constitutionally protected liberty interest in telephone and visitation privileges. *Coleman v. Long*, 772 F. App'x 647, 649–50 (10th Cir. 2019) (citing *Thompson*, 490 U.S. at 460–61). And despite New Mexico's spousal visitation protections, *McGee*, 2009 WL 10707098, at *14, deprival of telephone and visitation privileges do not impose an atypical and significant hardship. *See Cleveland v. Martin*, 590 F. App'x 726, 732 (10th Cir. 2014) (quoting *Sandin*, 515 U.S. at 484).

An inmate has a constitutionally protected liberty interest in remaining in general population only when segregated housing has atypical conditions relative to those in general population. *See Sandin*, 515 U.S. at 486. Segregated housing has typical conditions when it mirrors general population. *See id.*; *Jordan v. Fed. Bureau of Prisons*, 191 F. App'x 639, 651–52 (10th Cir. 2006) (reasoning that administrative detention mirrored general population when inmates had one less social call per month and roughly seven hours less recreation time per week); *Fogle v. Pierson*, 435 F.3d 1252, 1265 (10th Cir. 2006) (reasoning that administrative segregation did not mirror general population when inmates faced daily cell searches, twenty-four hour electric lighting, and no privacy).

Additionally, the Due Process Clause does not grant inmates a right to appeal disciplinary sanctions. *Lowe v. Sockey*, 36 F. App'x 353, 360 (10th Cir. 2002) (citing *Wolff*, 418 U.S. at 564–66). When states confer a right to appeal disciplinary sanctions, the right becomes a constitutionally protected liberty interest only if its denial imposes atypical or significant hardships or inevitably affects the duration of the sentence. *See Harrison v. Morton*, 490 F. App'x 988, 994 (10th Cir. 2012) (citing *Sandin*, 515 U.S. at 484).

If an inmate plausibly alleges a deprivation of a constitutionally protected liberty interest, a court must then determine if the prison staff afforded procedural due process. *Thompson*, 490 U.S. at 460. Prison staff afford inmates due process by providing "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, [for example, preventing the spread of COVID-19], to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Mitchell*, 80 F.3d at 1445 (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985))*; See also Johnson*

*v. Kuhn*, No. 22-CV-4453 BRM/MAH, 2022 WL 4288277, at *3 (D.N.J. Sept. 15, 2022) (stating that prisons have a legitimate interest in preventing the spread of COVID-19). A court need not reexamine the record or weigh the credibility of evidence because due process is met if "some evidence," however "meager," supports the sanction. *Hill*, 472 U.S. at 455; *Mitchell*, 80 F.3d at 1445; *see Baker v. Superintendent*, No. 08-CV-110 PS, 2009 WL 800221, at *4 (N.D. Ind. Mar. 25, 2009) (declining to revisit disciplinary officer's conclusion that inmate fought and did not merely exercise self-defense).

Accusations of bias prompt a court to analyze whether discipline was imposed for an improper purpose, presuming the disciplinary officer's honesty and integrity. *See Mitchell*, 80 F.3d at 1446; *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004). Factual errors or failure to comply with internal policy show neither bias nor a failure of due process. *See Mitchell*, 80 F.3d at 1445–46; *Malipurathu v. Wade*, No. 15-CV-182 JHP/PHC, 2018 WL 4567710, at *5 (N.D. Okla. Sept. 24, 2018) (citing *Liteky v. United States*, 510 U.S. 540, 556 (1994)).

Here, Zamarron was not entitled to procedural due process safeguards before Defendants removed his telephone and visitation privileges because he lacks a constitutionally protected liberty interest in those privileges. *See Coleman*, 772 F. App'x at 649–50; *Cleveland*, 590 F. App'x at 732. Moreover, Zamarron was not entitled to due process before being placed in segregation because the Complaint does not allege that segregated housing is atypical relative to general population. *See Sandin*, 515 U.S. at 486. Further, Zamarron had no due process right to appeal his disciplinary sanctions. *See Lowe*, 36 F. App'x at 360; *Harrison*, 490 F. App'x at 994. The Complaint accuses Defendants Garcia and Bourne of failing to answer Zamarron's appeals, but it does not cite any state created interest in such an appeal. *See* ECF 69-1 at 4. Even if New Mexico law granted Zamarron a right to appeal disciplinary sanctions, that right becomes a constitutionally

protected liberty interest only if its denial imposes atypical or significant hardships or inevitably affected the duration of the sentence. *See Harrison*, 490 F. App'x at 994. The sanctions Zamarron sought to appeal did not affect the duration of his sentence. ECF 69-1 at 4. Denial of the appeals process imposed atypical or significant hardships only if the sanctions Zamarron sought to appeal imposed such hardships. *See Harrison*, 490 F. App'x at 994. Removing telephone and visitation privileges did not impose such hardships, *see Coleman*, 772 F. App'x at 649–50, and the Complaint does not allege that segregation imposed such hardships, ECF 69-1 at 4. Thus, Zamarron had no constitutionally protected liberty interest in appealing the removal of telephone and visitation privileges.[15]

Even if the Complaint plausibly alleged a protected liberty interest, Defendant Gallegos afforded Zamarron procedural due process safeguards. *See Thompson*, 490 U.S. at 460. The Complaint does not allege that Defendant Gallegos deprived Zamarron of advance written notice of the disciplinary charges. ECF 69-1 at 3–4. Additionally, the Complaint acknowledges a "disciplinary report" where Defendant Gallegos explained the evidence she relied on and the reasons she imposed certain sanctions. *See id.* Moreover, according to the Complaint, Defendant Gallegos properly considered institutional safety goals alongside Zamarron's due process rights when she decided pursuant to a COVID-19 health order not to interview Zamarron.[16] *See id.*

Additionally, the Complaint indicates that some evidence, however meager, supported Defendant Gallegos's sanctions. *See Hill*, 472 U.S. at 455; *Mitchell*, 80 F.3d at 1445. The

---

[15] Even if Zamarron amended his Complaint to allege that conditions in segregation did not mirror those in general population, which would create a constitutionally protected liberty interest in appealing sanctions removing him from general population, this claim against Defendants Garcia and Bourne, the Defendants allegedly responsible for the appellate process, fails the second prong of the qualified immunity analysis. *See infra* Part V(c)(2).

[16] Defendant Gallegos would be entitled to qualified immunity on this claim because "courts around the country have addressed qualified immunity for government officials at the 12(b)(6) stage regarding COVID-19 measures and found government officials to be immune from suit in their personal capacities." *N.M. Elks Assoc. v. Grisham*, 595 F. Supp. 3d 1018, 1027–28 (D.N.M. 2022) (internal quotations omitted) (collecting cases).

Complaint states that the reports relied upon by Defendant Gallegos contradict *many* statements in her disposition. ECF 69-1 at 3. Even if the reports contradict *many* statements in her disposition, they do not contradict *all* statements in her disposition; therefore, *some* evidence in the reports must support her disposition. *See id.* According to the Complaint, Defendant Gallegos did not properly consider evidence that the altercation would not have happened but for Defendants violating policy by housing Zamarron with NMCD inmates and allowing quarantined inmates out of their cells to collect food on the morning of the altercation. *Id.* at 4. Because some evidence supports the sanctions, the Court will not reexamine the weight Defendant Gallegos assigned to the alleged policy failures. *See Gwinn*, 345 F.3d at 1220.

Finally, the Complaint does not overcome the presumption of honesty to plausibly accuse Defendant Gallegos of bias. *See Mitchell*, 80 F.3d at 1446; *Gwinn*, 354 F.3d at 1220. The Complaint alleges no facts showing bias. *See* ECF 69-1. Instead, it concludes that Zamarron is so blameless that any sanctions imposed can be explained only by bias. *See* ECF 69-1 at 4. At bottom, the Complaint accuses Defendant Gallegos of making factual errors, not bias. *See id*. Accordingly, the Court recommends granting the Motion to the extent that it seeks dismissal with prejudice of the claims against Defendants Gallegos, Garcia, and Bourne concerning the disciplinary process because it is obvious that Zamarron cannot prevail on the alleged facts. *See Gee*, 627 F.3d at 1195.

4.  <u>The Complaint does not plausibly allege, and could not be amended to plausibly allege, that any Defendant violated Zamarron's rights by failing to follow policies.</u>

The Complaint accuses Defendants Bourne, Chacon, and Madrid of violating Zamarron's rights by violating policies and procedures. ECF 69-1 at 1–4. In this section, the Court will explain that the Complaint's allegations fail to plausibly allege that (1) Defendant Bourne violated Zamarron's rights by failing to follow the policy of housing NMCD inmates separately from

county jail hold inmates; and (2) Defendants Madrid and Chacon violated Zamarron's rights by failing to follow New Mexico COVID-19 health orders and allowing quarantined inmates to leave their cells to collect food.[17]

Prison staff do not violate the Constitution by violating administrative regulations or internal policies. *See Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)). Violating policy becomes unconstitutional only when underlying conduct also violates the Constitution without reference to the violated policy. *See Hovater*, 1 F.3d at 1068 n.4; *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996) (stating that violation of policy does not implicate the Constitution when "constitutional minima are nevertheless met") *Farmer*, 511 U.S. at 834 (Eighth Amendment minima are not met if harm is sufficiently serious and the defendants acted with deliberate indifference toward inmate safety).

     *a.  Policy of housing NMCD inmates separately from county jail hold inmates*

The Complaint accuses Defendant Bourne of violating NMCD policy by placing Zamarron with NMCD inmates, but it does not explain how placing Zamarron with NMCD inmates violates the Eighth Amendment. ECF 69-1 at 1–2. The Complaint implies that housing county jail hold inmates "with inmates who have already been sentenced [and] convicted to [NMCD]" causes general danger. *Id.* at 1. This recitation of general danger, however, does not allege a sufficiently serious harm; nor does it allege that Defendant Bourne acted with deliberate indifference towards inmate safety. *Id.* Accordingly, the Complaint fails to state a claim against Defendant Bourne for housing Zamarron with NMCD inmates.

---

[17] The Complaint accuses Defendant Gallegos of "not following policy" by sanctioning Zamarron. Having already discussed the due process implications of the disciplinary process, *see supra* Part V(b)(3), the Court concludes similarly that the Eighth Amendment is not implicated when a prison disciplinary officer fails to follow internal policies. *See Brown v. Smith*, 828 F.2d 1493, 1494–95 (10th Cir. 1987); *Garcia v. Sanders*, 07-CV-631 WJ/KBM, 2008 WL 11451323, at *7 (D.N.M. Aug. 20, 2008).

### b. COVID-19 public health orders

To establish the objective element of an Eighth Amendment claim related to the risk of COVID-19 in a correctional facility, a plaintiff must show that the inmates faced a heightened health risk from COVID-19. *Medina v. Williams*, No. 21-1350, 2022 WL 2714517, at *2 (10th Cir. July 13, 2022); *Carranza v. Reams*, 614 F. Supp. 3d 899, 913 (D. Colo. 2020). To establish the subjective element, a plaintiff must show that the defendants responded unreasonably to COVID-19's risks. *Medina*, 2022 WL 2714517, at *2 (quoting *Wilson v. Williams*, 961 F.3d 829, 840–41 (6th Cir. 2020)); *United Staes v. Ferry*, 457 F. Supp. 3d 1163, 1173 (D.N.M. 2020). Prison staff respond reasonably when they act affirmatively to mitigate COVID-19's risks. *Medina*, 2022 WL 2714517, at *2; *Ferry*, 457 F. Supp. 3d at 1173.

Here, the Complaint establishes neither the objective nor the subjective element of a deliberate indifference claim. The Complaint does not allege that Zamarron or the other inmates faced a heightened health risk from COVID-19. *See* ECF 69-1. Moreover, the Complaint fails to explain how it was unreasonable for Defendants Chacon and Madrid to allow quarantined inmates to leave their cells briefly to pick up food. *Id.* at 2. Additionally, the Complaint's allegations acknowledge an affirmatively implemented, yet imperfectly followed, mitigation procedure for inmates awaiting test results. *See id.* Accordingly, the Court recommends granting the Motion to the extent that it seeks dismissal with prejudice of the failure to follow policy claims against Defendants Bourne, Chacon, and Madrid because it is obvious that Zamarron cannot prevail on the alleged facts. *See Gee*, 627 F.3d at 1195.

     5.   <u>The Complaint does not plausibly allege, and could not be amended to</u>
<u>plausibly allege, that Defendants Gallegos, Garcia, and Bourne violated</u>
<u>Zamarron's Eighth Amendment rights under a supervisory liability theory.</u>

A supervisor is liable for a subordinate's Eighth Amendment violation only if an "affirmative link exists between the constitutional deprivation and either the supervisor's personal participation or his failure to supervise[.]" *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996) (internal quotations omitted); *see Vasquez v. Jones*, No. 20-CV-612 RB/DLM, 2024 WL 492409, at *3 (D.N.M. Feb. 8, 2024) (quoting *Est. of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)). An affirmative link does not exist when a supervisor merely knows of a subordinate's conduct; rather, it exists when a supervisor (1) had personal involvement in the constitutional deprivation; (2) caused the plaintiff harm; and (3) acted with the same state of mind necessary for the underlying constitutional violation. *Gomez*, 745 F.3d at 435.

The Complaint fails to plausibly allege that Defendants Gallegos, Garcia, and Bourne violated Zamarron's Eighth Amendment rights under a supervisory liability theory because the Complaint does not allege an affirmative link between Zamarron's injury and the supervisors' personal participation or their failure to supervise. *See Grimsley*, 93 F.3d at 679; *Vasquez*, 2024 WL 492409, at *3. Instead, the Complaint seeks to hold these Defendants liable for – at most – knowing that other Defendants violated Zamarron's rights. ECF 69-1 at 4. The Complaint accuses Defendants Garcia and Bourne of "supervis[ing and] acknowledg[ing] every event" described in the Complaint. *Id*. Further, the Complaint asserts that the same two defendants failed to review conduct of other named defendants. *Id.* Additionally, the Complaint insists that Defendants Gallegos, Garcia, and Bourne's supervisory roles make them liable for any unconstitutional acts by any named defendant. *Id.* The Complaint's assertions do not, however, accuse these Defendants of personal participation. *See id.* Furthermore, the Complaint does not plausibly allege that these

Defendants acted with deliberate indifference towards Zamarron's wellbeing through their supervision. *See id.* Accordingly, the Court recommends granting the Motion to the extent that it seeks dismissal with prejudice of the supervisory liability claims against Defendants Gallegos, Garcia, and Bourne because it is obvious that Zamarron cannot prevail on the alleged facts. *See Gee*, 627 F.3d at 1195.

> 6. <u>The Complaint does not plausibly allege, and could not be amended to plausibly allege, that Defendants Ramirez, Verrett, and Romero violated Zamarron's Eighth Amendment rights through threats or "verbal assault."</u>

Verbal threats that give an inmate an objectively credible terror of instant and unexpected death violate the Eighth Amendment. *See Northington v. Jackson*, 973 F.2d 1518, 1524 (10th Cir. 1992); *Lovato v. Lytle*, No. 22-CV-255 MIS/LF, 2024 WL 3273843, at *9 (D.N.M. July 2, 2024) (citing *Burton v. Livingston*, 791 F.2d 97, 100 (8th Cir. 1986) (finding harm where a prison guard drew a weapon and made threats to a prisoner using racially charged language); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (holding that a threat to hang prisoner with nothing more was insufficient)); *Irving v. Dormire*, 519 F.3d 441, 448–49 (8th Cir. 2008) (finding that repeated death threats and labeling plaintiff as a snitch made the terror objectively credible).

A "verbal assault" does not violate the Eighth Amendment. *See Redmond*, 882 F.3d at 941; *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001); *Martinez v. Zadroga*, 213 F. App'x 729, 731 (10th Cir. 2007) ("words may be hurtful; nevertheless, something more akin to sticks and stones is required to state an Eighth Amendment cause of action"); *Baker v. Villalobos*, No. 18-CV-2301 PA/GJS, 2019 WL 2234474, at *8 (C.D. Cal. Mar. 4, 2019) ("Although Defendants later laughed at Plaintiff while he was at the medical clinic – conduct that is unkind and harsh – it is not sufficient to establish culpable action.").

The Complaint does not plausibly allege that Defendants Verrett, Ramirez, and Romero

violated Zamarron's Eight Amendment rights by threatening him because they did not give Zamarron an objectively credible terror of instant and unexpected death. *See Northington*, 973 F.2d at 1524; *Irving*, 519 F.3d at 448–49. The Complaint accuses Defendant Ramirez of telling Zamarron to "shut the fuck up before it happens again," after Zamarron asked who punched him. ECF 69-1 at 3. At most, Defendant Ramirez created in Zamarron an objectively credible terror of being punched again, not of instant and unexpected death. *See id.* Additionally, the Complaint alleges that Defendant Verrett threatened to use Zamarron as a "human mop" to clean up any spilled water. *Id.* This threat allegedly induced Zamarron to endure pain caused by chemical spray by opening his eyes for disciplinary report photos. *Id.* This pain, however, did not give rise to an objectively credible terror of instant and unexpected death. *See id.*

Moreover, the Complaint's alleged verbal assaults do not violate the Eighth Amendment. *See Redmond*, 882 F.3d at 941; *McBride*, 240 F.3d at 1291 n.3. The Complaint insists that Defendants Verrett, Ramirez, and Romero called Zamarron "an idiot, dumbass, and a worthless fuck," among other verbal assaults, while trying to take photos for Zamarron's disciplinary report. ECF 69-1 at 3. These alleged verbal assaults, however rude and unprofessional, do not violate the Eighth Amendment, and they did not create in Zamarron an objectively credible terror of instant and unexpected death. *Id.* Accordingly, the Court recommends granting the Motion to the extent that it seeks dismissal with prejudice of the threats and verbal assault claims against Defendants Verrett, Ramirez, and Romero because it is obvious that Zamarron cannot prevail on the alleged facts. *See Gee*, 627 F.3d at 1195.

### c. Whether the law clearly establishes the rights plausibly alleged to have been violated.

Next, the Court applies the second prong of the qualified immunity analysis to determine whether the Defendants are alleged to have violated clearly established rights. The Court will not

perform this analysis on the Complaint's claims that do not plausibly allege, and could not be amended to plausibly allege, a constitutional violation because the Court recommends dismissing those claims with prejudice pursuant to the first prong of the qualified immunity analysis: they do not plausibly allege a violation of a constitutional right. Thus, the Court will only perform this analysis on the Complaint's claims that plausibly allege, or could be amended to plausibly allege, a violation of a constitutional right. If the Court finds the Complaint could be amended to plausibly allege a violation of a right that is not clearly established, allowing leave to amend with respect to that alleged violation would be futile because it would fail the second prong of the qualified immunity analysis. *See Gee*, 627 F.3d at 1195.

As the Court explained *supra* Part V(b), the Complaint plausibly alleges that Defendant Chacon failed to reasonably protect Zamarron from violence at the hands of other inmates, and it could be amended to plausibly allege the same against Defendant Madrid. Additionally, the Complaint could be amended to plausibly allege Zamarron's constitutionally protected liberty interest in appealing his removal from general population, of which Defendants Garcia and Bourne allegedly deprived him.[18]

Thus, two rights survive to the second prong of the qualified immunity analysis: (1) the right to reasonable protection from violence at the hands of another inmate; and (2) a due process right to a disciplinary appeals process. In this section, the Court will determine if either was clearly established at the time of the events in question.

---

[18] As explained *supra* Part V(b)(3)(b), Defendant Gallegos afforded Zamarron procedural due process safeguards before removing him from general population. Thus, amendment would be futile as to her even if Zamarron plausibly alleged a constitutionally protected liberty interest, which would require amendment to show that the conditions in segregation did not mirror those in general population. If Zamarron had a constitutionally protected liberty interest in remaining in general population, he would also have a constitutionally protected liberty interest in appealing his removal from general population.

      1.  <u>Zamarron had a clearly established right to reasonable protection from violence at the hands of other inmates.</u>

The right to reasonable protection from violence at the hands of other inmates is clearly established. *See, e.g.*, *Farmer*, 511 U.S. at 833; *Castillo v. Day*, 790 F.3d 1013, 1020 (10th Cir. 2015) (citing *Ramos*, 639 F.2d at 572–74); *Dowling v. Hannigan*, 995 F. Supp. 1188, 1191 (D. Kan. 1998) ("Under law that has been clearly established at least since 1990, prisoners have a constitutional right to reasonable protection from attacks by other inmates."). Moreover, this right is clearly established through *Requena v. Roberts*, a case involving materially similar conduct. *See* 893 F.3d at 1214. *Requena* establishes that subjective knowledge that a fight is likely to occur, coupled with a failure to act affirmatively to prevent that fight, violates an inmate's right to reasonable protection from violence at the hands of other inmates. *See id.* Therefore, *Requena* put Defendants Chacon and Madrid on notice that having subjective knowledge that inmates would start a fight with Zamarron and failing to act to prevent the fight violated Zamarron's right to reasonable protection from violence at the hands of other inmates. *See id.* Accordingly, qualified immunity does not shield Defendant Chacon from liability, and, if Zamarron amends his Complaint to plausibly accuse Defendant Madrid of violating this right, qualified immunity would not shield Defendant Madrid.[19] The Court recommends denying the Motion to the extent that it seeks dismissal of failure to protect claims against Defendant Chacon and granting the Motion to the extent that it seeks dismissal without prejudice and with leave to amend of failure to protect

---

[19] The Court reminds Zamarron that he must comply with Rule 11, which requires that factual allegations either have or will have evidentiary support. Fed. R. Civ. P. 11(b); *Quarrie v. Wells*, No. 17-CV-350 MV/GBW, 2019 WL 2107281, at *2 (D.N.M. May 14, 2019). Leave to amend is not leave to invent facts to fit missing elements of claims. For example, the operative Complaint and Zamarron's past complaints contain inconsistent factual allegations that may be material. *Compare* ECF 1 at 11–12 (stating that Defendants provided water to Zamarron before going into the medical unit) *with* ECF 69-1 at 3 (stating that Defendants did not provide water to Zamarron before going into the medical unit). Zamarron's factual inconsistencies, casual attitude towards prosecuting his case [*see* ECFs 63, 77 (no response to dispositive motions)], and two previous opportunities to amend [*see* ECFs 17, 70], prompt the instruction to Zamarron that he amend his Complaint to state a plausible claim for relief in a manner that complies with Rule 11.

claims against Defendant Madrid.

>    2.   Zamarron did not have a clearly established due process right to a disciplinary
>         appeals process.

Neither the Supreme Court nor the Tenth Circuit has clearly established a due process right to a disciplinary appeals process, even when state law creates such a process, and even when the plaintiff seeks to appeal the denial of a constitutionally protected liberty interest. In fact, in unpublished decisions, the Tenth Circuit has refused to recognize such a right. *See Harrison v. Morton*, 490 F. App'x 988, 993–94 (10th Cir. 2012) (citing *Sandin*, 515 U.S. at 484) (finding that Oklahoma law creating a right to administrative appeals of prison disciplinary proceedings did not confer a due process right to such an appeal under *Sandin*); *Lowe*, 36 F. App'x at 360 (citing *Wolff*, 418 U.S. at 564). Moreover, preventing Zamarron from appealing a sanction depriving him of a constitutionally protected liberty interest is not so egregious or obviously unconstitutional that the Court can overlook the lack of on-point precedent. *See Taylor*, 592 U.S. at 7–9. In fact, as this Court explained *supra* Part V(b)(3)(b), Zamarron was afforded procedural due process safeguards before being removed from general population. Thus, even if Zamarron could prove that Defendants Garcia and Bourne violated his due process rights by failing to answer his appeal, these Defendants are entitled to qualified immunity because they were not on notice that they were denying Zamarron's due process rights.

## VI.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Amended Complaint **[ECF 75] be GRANTED IN PART and DENIED IN PART** as follows:

(1) To the extent Defendants seek dismissal of Zamarron's claims against Defendant Chacon for failing to protect Zamarron from violence at the hands of other inmates, the Motion be

**DENIED**.

(2) To the extent Defendants seek dismissal of Zamarron's claims against Defendant Madrid for failing to protect Zamarron from violence at the hands of other, the Motion be **GRANTED** and such claims be **DISMISSED WITHOUT PREJUDICE** and with leave to amend.

(3) In all other respects, the Motion be **GRANTED** and all remaining claims be **DISMISSED WITH PREJUDICE** and without leave to amend.

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE